IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-11311 |
| ) | |
| MASSACHUSETTS BAY ) | |
| TRANSPORTATION AUTHORITY ) | |
| ) | |
| and ) | |
| ) | |
| MASSACHUSETTS BAY ) | |
| COMMUTER RAILROAD ) | |
| COMPANY, LLC ) | |
| ) | |
| Defendants. ) | |

CONSENT DECREE

## TABLE OF CONTENTS

I.      JURISDICTION AND VENUE . ..................................................................... 3

II.     APPLICABILITY . ........................................................................................ 4

III.    DEFINITIONS  ............................................................................................. 5

IV.     CIVIL PENALTY . ......................................................................................... 6

V.      LOCOMOTIVE IDLING COMPLIANCE MEASURES ................................ 8

VI.     HEAD END POWER UNIT REPLACEMENTS . ........................................ 11

VII.    SUPPLEMENTAL ENVIRONMENTAL PROJECT . ................................. 12

VIII.   REPORTING REQUIREMENTS . .............................................................. 15

IX.     STIPULATED PENALTIES . ...................................................................... 17

X.      FORCE MAJEURE . ................................................................................... 21

XI.     DISPUTE RESOLUTION . ......................................................................... 23

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . ..................... 26

XIII.   NOTICES ................................................................................................... 27

XIV.    COSTS . ..................................................................................................... 28

XV.     MODIFICATION ......................................................................................... 28

XVI.    INTEGRATION ........................................................................................... 29

XVII.   SIGNATORIES/SERVICE .......................................................................... 29

XVIII.  PUBLIC PARTICIPATION . ........................................................................ 30

XIX.    EFFECTIVE AND TERMINATION DATES . .............................................. 31

XX.     RETENTION OF JURISDICTION . ............................................................ 32

XXI.    FINAL JUDGMENT . .................................................................................. 32

APPENDIX I  ......................................................................................................... 37

APPENDIX II ......................................................................................................... 38

**WHEREAS**, Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed contemporaneously with the lodging of this Consent Decree a Complaint in this action ("Complaint") against Defendants, the Massachusetts Bay Transportation Authority ("MBTA") and the Massachusetts Bay Commuter Railroad Company, LLC ("MBCR"), alleging that the MBTA and MBCR (together, "Defendants") have committed numerous violations of the federally-enforceable Massachusetts locomotive idling regulation at commuter rail layover stations in Eastern Massachusetts;

**WHEREAS,** MBCR provides commuter rail operations and maintenance service on behalf of MBTA;

**WHEREAS**, the Plaintiff and Defendants (together, "the Parties"), without the necessity of trial regarding any issue of fact or law, and without any admission of liability by Defendants, consent to entry of this Consent Decree;

**WHEREAS**, the Parties agree, and the Court finds, that settlement of this action without adjudication or admission of facts or law is in the public interest and that entry of this Consent Decree without further litigation is an appropriate resolution of the claims alleged in the Complaint;

**THEREFORE**, it is adjudged, ordered and decreed as follows:

## I. JURISDICTION AND VENUE

1.    The Court has jurisdiction over the subject matter of this action and over the Parties to this Consent Decree pursuant to Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

2.     Venue properly lies in this district pursuant to Section 113(b) of the CAA, 42

U.S.C. § 7413(b), and 28 U.S.C. § 1395(a), because Defendants are located in the district, and

because the violations alleged in the Complaint occurred there.  For purposes of this Decree, or

any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree

and over Defendants and consent to venue in this judicial district.

3.     For purposes of this Consent Decree, Defendants agree that the Complaint states

claims upon which relief can be granted against Defendants pursuant to Section 113 of the CAA,

42 U.S.C. § 7413.

4.     The United States has notified the Commonwealth of Massachusetts of the

commencement of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## II.  APPLICABILITY

5.     The provisions of this Consent Decree shall apply to and be binding upon the

United States on behalf of the EPA, and upon the Defendants and any successors, assigns, or

other entities or persons otherwise bound by law.

6.     No transfer of ownership by MBTA of its layover facilities and/or diesel

locomotives, whether in compliance with the procedures of this Paragraph or otherwise, shall

relieve MBTA of its obligations to ensure that the terms of this Decree are implemented, or

relieve MBCR of its obligations to ensure that the terms of this Decree are implemented to the

extent that MBCR is continuing to provide commuter rail operations and maintenance to MBTA

or its successors, assigns, or other entities or persons otherwise bound by law.  If, at any time

before termination of this Decree, MBTA seeks to transfer its layover facilities and/or diesel

locomotives or if MBTA seeks to retain a party besides MBCR to contract to provide commuter

rail operations and maintenance service on behalf of MBTA, MBTA shall, at least thirty (30) days prior to such transfer or entrance into the contract, inform such party/parties of the ongoing requirements of this Decree by providing them a copy of this Consent Decree and MBTA shall simultaneously provide written notice of the prospective contractual relationship to the United States in accordance with Section XIII below.  Any attempt by MBTA to transfer ownership of its layover facilities or diesel locomotives, or replace MBCR with another party to provide commuter rail operations and maintenance to MBTA, without complying with this Paragraph constitutes a violation of this Decree.

   7.  Defendants shall provide a true copy of this Consent Decree to all officers, managers, supervisors, and agents whose duties might reasonably include compliance with any provision of this Decree.  Defendants shall also provide a copy of the Decree to any contractor retained to perform work required under this Consent Decree, and shall condition any such contract upon performance of the work in conformity with the terms of the Decree.

   8.  In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.  DEFINITIONS

   9.  Terms used in this Consent Decree that are defined in the CAA or in regulations promulgated pursuant to the CAA shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

(a)    "Consent Decree" or "Decree" shall mean this document and all attachments and appendices hereto;

(b)    "Day" shall mean a calendar day, unless otherwise specified;

(c)    "Defendants" shall mean the Massachusetts Bay Transportation Authority ("MBTA") and the Massachusetts Bay Commuter Railroad Company, LLC ("MBCR");

(d)    "Layover facility" shall mean any facility or location owned, leased or used by permission by Defendants where any of Defendants' diesel locomotives routinely lay over, currently or in the future, at any time of day or night during weekdays and weekends;

(e)    "Lay over" shall mean any time when Defendants' diesel locomotives and/or passenger cars are stationary and are i) not carrying passengers, or ii) unavailable to carry passengers;

(f)    "Massachusetts locomotive idling regulation" shall mean the federally-approved Massachusetts diesel locomotive regulation, set forth at 310 Code of Massachusetts Regulations ("CMR") 7.11(2);

(g)    "Parties" shall mean the United States on behalf of EPA, and the MBTA and MBCR;

(h)    "Paragraph," when followed by an Arabic numeral, shall mean the corresponding paragraph of this Consent Decree;

(i)    "Section," when followed by a Roman numeral, shall mean the corresponding section of this Consent Decree;

(j)    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies; and

(k)    "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.  CIVIL PENALTY

10.    Defendants shall pay a civil penalty of $225,000, plus applicable interest, by no later than thirty (30) days after the date of entry of this Consent Decree ("Entry Date").

11.     Defendants shall make the above-described civil penalty payments by FedWire

Electronic Funds Transfer ("EFT") in accordance with written instructions to be provided to

Defendants by the U.S. Department of Justice or the U.S. Attorneys Office for the District of

Massachusetts.  At the time of each payment, Defendants shall provide written notice of the

payment via facsimile and mail to the United States in accordance with Section XIII below.  The

notice shall contain a copy of the EFT transaction record, together with a transmittal letter that

shall state that the payment is for the case's civil penalty, reference the case's civil docket

number and Department of Justice case number DJ# 90-5-2-1-09617, and explain the calculation

of any interest included in the payment.  Defendants shall also provide this same written notice

by e-mail to acctsreceivable.CINWD@epa.gov, and by mail to the U.S. Environmental

Protection Agency, Fine and Penalties, Cincinnati Finance Center, P.O. Box 979077, St. Louis,

MO, 63197-9000.

12.     If Defendants fail to make their penalty payment in full by its due date,

Defendants shall pay 6% interest on the late amount, together with any nonpayment penalties

and any governmental enforcement expenses incurred to collect the late payment in accordance

with Section 113(d)(5) of the CAA, 42 U.S.C. § 7413(d)(5).  Defendants shall also be liable for

stipulated penalties in accordance with Section IX below.

13.     Defendants certify that they shall not use any payments made pursuant to this

Section, and any payments made pursuant to Section IX, in any way as, or in furtherance of, a

tax deduction for Defendants, or any of their corporate affiliates, under federal, state or local

law.  Defendants specifically waive any confidentiality rights they have with respect to their

federal tax returns and return information under 26 U.S.C. § 6103, and on any state or local tax

returns, as to the United States for the purpose of ensuring the accuracy of this certification.

## V.   LOCOMOTIVE IDLING COMPLIANCE MEASURES

### A.   General Locomotive Idling Compliance

14.     Defendants shall at all times comply with the Massachusetts locomotive idling

regulation, set forth at 310 CMR 7.11(2).

### B.   System-Wide Electric Plug-In Stations

15.     Defendants shall install, operate, and maintain electric power plug-in stations

("plug-ins") at all of Defendants' layover facilities in Defendants' commuter rail system such

that, at all times, there are sufficient plug-ins to fully supply electric auxiliary power to all diesel

locomotives that lay over at Defendants' layover facilities.  For purposes of this Consent Decree,

an electric power plug-in station shall be deemed to fully supply electric auxiliary power to a

diesel locomotive train when either (a) the plug-in supplies sufficient electricity to fully operate

all electrically powered systems on the train's locomotive, and all the train's passenger cars, at

the same time, or (b) the plug-in supplies sufficient electricity to fully operate all electrically

operated systems on the train's locomotive, and on one or more of the train's passenger cars, at

the same time, such that Defendants, using established protocols, are able to perform all train

maintenance, service, or other lay over operations requiring only the use of electric power,

without running the locomotive's diesel engines.

16.     Defendants' layover facilities, and each facility's electric plug-in stations, are

listed in Appendix II to this Consent Decree.  By signing this Consent Decree, Defendants

certify in accordance with Paragraph 39, that Appendix II lists all of Defendants' current layover

facilities, and accurately lists both the number of locomotives that routinely lay over at each

facility and the number of available, fully operational electric plug-in stations at each facility.  In

addition, Defendants certify that currently there are sufficient plug-ins to fully supply electric

auxiliary power to all diesel locomotives that lay over at all of Defendants' layover facilities

except at the following facilities and locations:

> (a)   The Commuter Rail Maintenance Facility (a/k/a the Boston Engine
> Terminal), located in Somerville, Massachusetts, at the facility's West End Diesel House;

> (b)   The Widett Circle Commuter Rail Service and Inspection Facility ("Widett
> Circle facility"), located in South Boston, on tracks immediately adjacent to the facility's
> maintenance/storage building; and

> (c)   The South Hampton Main Yard (a/k/a the Big Yard), a property adjacent to
> the Widett Circle facility in South Boston.

17.     Defendants shall install and commence full operation of two electric

plug-in stations at the West End Diesel House at the Commuter Rail Maintenance Facility in

Somerville by no later than September 30, 2010.  The two new plug-in stations combined shall

be capable of providing electric power to a total of eight locomotives on four tracks.  On and

after September 30, 2010, Defendants shall have sufficient electric plug-ins to fully supply

electric auxiliary power to all diesel locomotives that lay over at the West End Diesel House.

18.     Defendants shall install and commence full operation of one electrical plug-in

station for outdoor tracks, known as Track 4 and the Runner Track, located immediately adjacent

to the Widett Circle facility's maintenance/storage building in South Boston by no later than

September 30, 2010.  The new plug-in station shall be capable of providing electric power to two

locomotives.  On and after September 30, 2010, Defendants shall have sufficient electric plug-ins to fully supply electric auxiliary power to all diesel locomotives that lay over on all outdoor tracks immediately adjacent to the Widett Circle facility's maintenance/storage building.

19.     Defendants shall use their best efforts to work with Amtrak regarding the modification of four existing electric plug-in stations on various outdoor tracks located at the South Hampton Main Yard, a/k/a the Big Yard, which is adjacent to the Widett Circle facility. The Big Yard is owned by Amtrak but has been used by Defendants for diesel locomotive layovers.  The four modified plug-stations combined will be capable of providing electric power to a total of eight locomotives on four tracks.  Amtrak's modification of the plug-in stations at the Big Yard is currently scheduled to be completed in 2012.  When these plug-in modifications are completed, Defendants shall have sufficient electric plug-ins to fully supply electric auxiliary power to all Defendants' diesel locomotives that lay over at the Big Yard.  Until the modifications are completed, Defendants shall lay over no more than the number of diesel locomotives at the Big Yard for which there are electric plug-in stations that are operational and in use to fully supply the locomotives with electric auxiliary power.

### C.  Use of All Available Electric Plug-In Stations

20.     Defendants shall use all available plug-ins located at Defendants' layover facilities, and at any other commuter rail stations, facilities or property owned or operated by Defendants, as necessary to fully comply with the Massachusetts locomotive idling regulation. For the purposes of this Paragraph, "available plug-ins" shall mean all operational electric plug-ins that can supply diesel locomotives with electric auxiliary power at any of the above-described locations.

---

### D.  Temporary Electric Plug-In Stations at Widett Circle

21.     In addition to the Widett Circle layover locations discussed in Section V.B above, Defendants routinely lay over diesel locomotives adjacent to the Widett Circle facility on Amtrak-owned property identified as the South Hampton Front Yard, a/k/a/ the Front Yard.

22.     On or before December 15, 2009, Defendants procured, installed and began full operation of a portable generator to supply electric auxiliary power for three temporary electric plug-in stations at the Front Yard.  By signing this Consent Decree, Defendants certify in accordance with Paragraph 39 that these temporary electric plug-in stations, together with the electric plug-in stations already available and in use at and adjacent to the Widett Circle facility, will ensure that there are sufficient electric plug-in stations to fully supply electric auxiliary power to all diesel locomotives that lay over at and adjacent to the Widett Circle facility at all times.  If Defendants cease to operate the portable generator and temporary plug-in stations for the Front Yard, Defendants shall also cease laying over diesel locomotives at the Front Yard unless Defendants have otherwise ensured that there are sufficient electric plug-in stations to fully supply electric auxiliary power to any diesel locomotives that lay over at the Front Yard.

### VI.  HEAD END POWER UNIT REPLACEMENTS

23.     Defendants shall replace the Cummins KTA19 head-end power ("HEP") units with new HEP units on no less than 14 locomotives in the MBTA commuter rail fleet.  The new HEP replacement units shall comply with Tier 2 emission standards for diesel engines under EPA's Locomotive Emissions Control Rules promulgated in 1997 and 2008.

24.     The HEP replacements required by this Section shall be in addition to any HEP replacements funded or purchased by Defendants prior to the Year 2010.

25. Defendants shall purchase, install and commence full operation of the HEP replacement units on the schedule set out below. Defendants shall keep to this purchase and installation schedule regardless of the final cost to Defendants of the HEP replacement units and their installation.

26. Defendants shall procure, install and commence full operation of the at least 14 new HEP units on the following schedule: by no later than September 1, 2010, Defendants shall issue requests for proposals to procure the new HEP units; by no later than September 1, 2011, Defendants shall purchase and take delivery of the new HEP units; and by no later than December 31, 2012, Defendants shall install and commence full operation of the at least 14 new HEP units on Defendants' commuter rail locomotives.

27. Defendants shall supply HEP replacement progress reports to EPA as required by Section VIII below. Each report shall contain:

    (a) a narrative description of the activities undertaken to implement the HEP replacements during the relevant reporting period, with specific reference to any implementation deadlines occurring in the reporting period;

    (b) an explanation of any difficulties or delays regarding the HEP replacements; and

    (c) a summary, with copies of supporting documentation, of the costs expended on the HEP replacements during the reporting period.

## VII. SUPPLEMENTAL ENVIRONMENTAL PROJECT

28. Defendants shall perform and satisfactorily complete a supplemental environmental project ("SEP"), the Commuter Rail Clean Diesel SEP, as set out in this Consent Decree and Appendix I.

29.     Defendants are responsible for the performance and satisfactory completion of the

SEP in accordance with the requirements of this Consent Decree and Appendix I.  Defendants

may employ or work with contractors, consultants or other entities to plan and implement the

SEP.

30.     Defendants certify in accordance with Paragraph 39 to each of the following:

(a)    that all cost information provided to EPA in connection with EPA's approval
of the SEP is complete and accurate and that Defendants in good faith estimate that the
price differential of fuel to implement the SEP is $ 1,000,000;

(b)    that, as of the date of executing this Consent Decree, Defendants are not
required to perform or develop the SEP by any federal, state, or local law or regulation,
and are not required to perform or develop the SEP by agreement, grant, or as injunctive
relief awarded in any other action in any forum;

(c)    that the SEP is not a project that Defendants were planning or intending to
construct, perform, or implement other than in settlement of the claims resolved in this
Consent Decree;

(d)    that Defendants have not received and will not receive credit for the SEP in
any other enforcement action; and

(e)    that Defendants will not receive any reimbursement for any portion of the
SEP from any other person.

31.     Defendants shall supply SEP progress reports to EPA as required by Section VIII

below.  Each report shall contain:

(a)    a summary of the current status of the SEP;

(b)    a description of the activities undertaken to implement the SEP during the
relevant reporting period, with specific reference to any implementation deadlines
occurring in the reporting period;

(c)    an explanation of any difficulties or delays in the implementation of the SEP;
and

(d)   a summary, with copies of supporting documentation, of the costs expended on the SEP during the reporting period.

32.   Within thirty (30) days after the completion of the SEP, Defendants shall submit a

SEP Completion Report to EPA.  The SEP Completion Report shall contain the following

information:

(a)   a description of the SEP as implemented;

(b)   a summary of all costs expended on the SEP;

(c)   a certification of completion stating that the SEP has been performed and satisfactorily completed pursuant to the provisions of this Consent Decree; and

(d)   a description of the environmental and public health benefits resulting from implementation of the SEP, including a quantification of the SEP's air pollutant reductions.

33.   Following receipt of the SEP Completion Report, EPA will do one of the

following:

(a)   provide written notice that it accepts the SEP Completion Report;

(b)   reject the SEP Completion Report and provide written notice to Defendants of any deficiencies, and grant Defendants an additional thirty (30) days, or such other time as EPA may in its sole and unreviewable discretion conclude is reasonable, in which to correct the deficiencies; or

(c)   reject the SEP Completion Report and provide written notice to Defendants of their failure to satisfactorily complete the SEP in accordance with the requirements of this Decree.

Defendants may invoke the procedures set forth in Section XI below to dispute EPA's

determination the SEP was not satisfactorily completed in accordance with the requirements of

this Decree.

34.     For federal income tax purposes, Defendants agree that they will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

35.     Any public statement, oral or written, in print, film, or other media, made by Defendants making reference to the Commuter Rail Clean Diesel SEP shall include the following language: "This project was undertaken as part of the settlement of a federal enforcement action taken against the MBTA and MBCR by the U.S. Environmental Protection Agency for alleged violations of the Clean Air Act."

36.     Until the termination of this Consent Decree, Defendants shall retain legible copies of all records, data or other information used to prepare any reports submitted to EPA regarding the SEP, and Defendants shall provide any such records, data or information to EPA within ten (10) days of EPA's request for the information.

## VIII.   REPORTING REQUIREMENTS

### A.   General Reporting Provisions

37.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by any federal, state, or local law, regulation, permit, or other requirement.

38.     Any information provided by Defendants pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

39.     All reports and other written information required by this Consent Decree to be sent by Defendants to the United States shall contain the following certification:

---

Page 15
United States v. MBTA and MBCR Consent Decree

I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments to it, and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein.  I further certify, based on personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

40.     Defendants shall ensure that such certified statement is signed by a responsible corporate officer, such as a president, vice-president, secretary, treasurer, senior manager responsible for environmental policy-making and decision making, or other person responsible for a principal business function.

### B.   Idling Compliance Reports

41.     Each calendar quarter, up to and including the quarter ending on June 30, 2012, Defendants shall provide to EPA a progress report regarding Defendants' compliance with the Massachusetts locomotive idling regulation.  The reports shall be due within (ten) 10 days after the end of each calendar quarter, that is, by January 10th, April 10th, July 10th and October 10th. Defendants shall provide their first compliance report for the calendar quarter ending in September 2010, unless Defendants and EPA agree in writing to alter this date.  Beginning in July 2012, Defendants shall provide the above-described reports semi-annually, with reports due by January 10th and July 10th.

42.     Each report shall state whether Defendants were in compliance with the Massachusetts locomotive idling regulation during the relevant reporting period, and shall identify all instances where any of Defendants' diesel locomotives idled unnecessarily for a

continuous period of time longer than 30 minutes.  Defendants shall include all instances in which a diesel locomotive idled in violation of any current policies, guidance or directives established by Defendants regarding locomotive idling, e.g., policies regarding idling in cold weather.  For each such instance, the report shall identify the idling locomotive; the layover facility where the idling occurred; the date, time and entire duration of the idling; and the steps taken by Defendants to address and minimize the idling and ensure that it will not reoccur.

43.     To prepare these reports, Defendants shall use all available written or electronic records, correspondence and data generated by Defendants containing information regarding locomotive layovers and idling, including but not limited to Defendants' daily layover logs.

### C.   HEP and SEP Progress Reports

44.     Each calendar quarter, up to and including the quarter ending on December 31, 2012, Defendants shall provide to EPA Region 1 a progress report regarding the performance of the HEP replacements required by Section VI, and the Commuter Rail Clean Diesel Project required by Section VII and Appendix I.  The reports, which may be combined, shall contain all information and documentation required by Sections VI and VII, and Appendix I.  The reports shall be due on the same schedule as for the above-described idling compliance reports.  Should Defendants be required to provide any progress reports after January 2013, the reports shall be provided semi-annually by July 10th and January 10th.  Defendants shall continue to provide the progress reports until discontinued as specified in this Consent Decree.

### IX.   STIPULATED PENALTIES

45.     Except as otherwise provided in this Consent Decree, Defendants shall be liable for stipulated penalties as set forth below in this Section.

46.     Late Payment of Civil Penalty:  If Defendants fail to timely pay any amount of
the civil penalty set out in Section IV, Defendants shall be liable for the unpaid amount and for
any interest or other charges as provided in Section IV, and for stipulated penalties as follows:

| Days of Failure to Pay | Penalty Per Day |
| --- | --- |
| 1 to 30 days | $ 1,000 |
| 31 days and beyond | $ 2,000 |

47.     Failure to Comply with Massachusetts Locomotive Idling Regulation:  If
Defendants violate the Massachusetts locomotive idling regulation, Defendants shall be liable
for stipulated penalties for each locomotive, for each violation, as follows:

| Duration of Excess Idling | Penalty Per Vehicle Per Occurrence |
| --- | --- |
| 1 to 30 minutes | $ 500 |
| 30 to 60 minutes | $ 1,500 |
| 60 to 120 minutes | $ 2,500 |
| 120 minutes and beyond | $ 5,000 |

48.     Failure to Perform Other Compliance Measures:  If Defendants fail to fully
perform or fully comply with any of the requirements set out in Section V.B, V.C and V.D
above, Defendants shall be liable for stipulated penalties for each violation of each such
requirement, as follows:

| Days of Failure to Perform | Penalty Per Day |
| --- | --- |
| 1 to 30 days | $ 1,000 |
| 31 to 60 days | $ 2,500 |
| 61 days and beyond | $ 5,000 |

49.     Failure to Perform HEP Unit Replacements:  If Defendants fail to fully perform
or fully comply with any of the requirements set out in Section VI, Defendants shall be liable for
stipulated penalties for each violation of each such requirement, as follows:

| Days of Failure to Perform | Penalty Per Day |
|---|---|
| 1 to 30 days | $ 500 |
| 31 to 60 days | $ 1,000 |
| 61 to 120 days | $ 2,500 |
| 121 days and beyond | $ 5,000 |

50.     Failure to Perform Commuter Rail Clean Diesel SEP:  If Defendants fail to fully

perform or fully comply with any of the requirements set out in Section VII or Appendix I,

Defendants shall be liable for stipulated penalties for each violation of each such requirement, as

follows:

| Days of Failure to Perform | Penalty Per Day |
|---|---|
| 1 to 30 days | $ 500 |
| 31 to 60 days | $ 1,000 |
| 61 to 120 days | $ 2,500 |
| 121 days and beyond | $ 5,000 |

51.     Failure to Provide Reports:  If Defendants fail to timely provide any information

required pursuant to Section VIII, Defendants shall be liable for stipulated penalties as follows:

| Days of Failure to Perform | Penalty Per Day |
|---|---|
| 1 to 60 days | $ 500 |
| 61 to 120 days | $ 1,000 |
| 121 days and beyond | $ 2,500 |

52.     Stipulated penalties arising under this Section shall begin to accrue on the day

that the violation of this Consent Decree first occurs, and shall continue to accrue for each day

until the day upon which the violation is fully corrected.  Separate stipulated penalties shall

accrue simultaneously for separate violations of this Consent Decree.  Stipulated penalties shall

accrue regardless of whether the United States has notified Defendants that a violation of this

Consent Decree has occurred.

53.     Stipulated penalties shall become due and owing, and shall be paid by Defendants, not later than thirty (30) days after the United States issues Defendants a written demand for them.  If any demanded stipulated penalties are not paid in full when due, Defendants shall pay the unpaid penalties and interest thereon.  Such interest shall accrue from the date the penalties were due, and shall be calculated in accordance with 28 U.S.C. § 1961.

54.     The United States, in an unreviewable exercise of its discretion, may reduce or waive stipulated penalties otherwise due it under this Consent Decree.

55.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the written notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall specify the violation(s) for which the penalties are being paid.

56.     Stipulated penalties shall continue to accrue as provided in Paragraph 52 above during any dispute resolution for stipulated penalties, with interest on accrued penalties payable and calculated in accordance with 28 U.S.C. § 1961, but need not be paid until the following:

    (a)     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) days of the effective date of the agreement or the receipt of EPA's decision;

    (b)     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) days of receiving the Court's decision or order, except as provided in Subparagraph (c), below;

    (c)     If any Party appeals the Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) days of receiving the final appellate court decision.

57. The stipulated penalty provisions of this Section shall be in addition to all other rights reserved by the United States pursuant to Section XII below. Nothing in this Section shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek other remedies or sanctions available by virtue of any violation by Defendants of this Consent Decree or of the statutes, regulations or permits referenced within it.

## X.  FORCE MAJEURE

58. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes entirely beyond the control of Defendants, or any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the full performance of or full compliance with any obligation of this Consent Decree subject to stipulated penalties despite Defendants' best efforts to perform the obligation. "Best efforts" include using best efforts to anticipate any potential force majeure event and to address the effects of any such event (a) as it is occurring; and (b) after it has occurred, such that the nonperformance is minimized to the greatest extent possible. Force majeure does not include Defendants' financial inability to perform the obligations of this Consent Decree. Stipulated penalties shall not be due for the number of days of nonperformance caused by a force majeure event as defined in this Paragraph, provided that Defendants comply with the terms of this Section.

59. If any event occurs which causes or may cause nonperformance of or noncompliance with any obligation of this Consent Decree subject to stipulated penalties, whether or not caused by a force majeure event, Defendants shall provide written notice to EPA as soon as possible, but not later than seven (7) days after the time Defendants first knew of the event, or by the exercise of due diligence should have known of the event. The notice shall

describe the noncompliance or expected nonperformance, including its causes and expected duration; describe the measures taken and to be taken by Defendants to prevent or minimize the nonperformance or expected nonperformance; provide a schedule for carrying out those actions; and state Defendants' rationale for attributing any nonperformance or expected nonperformance to a force majeure event. Failure to provide timely and complete notice in accordance with this Paragraph shall preclude Defendants from asserting any claim of force majeure with respect to the event in question.

60.    If EPA agrees that nonperformance or noncompliance with or potential nonperformance of or potential noncompliance with an obligation of this Consent Decree is attributable to force majeure, EPA will notify Defendants of its agreement and the length of the extension granted to perform the obligation. Stipulated penalties shall not accrue with respect to such obligation during the extension provided by EPA for performance. An extension of time to perform the obligation affected by a force majeure event shall not, by itself, extend the time to fully perform or fully comply with any other obligation under this Consent Decree.

61.    If EPA does not agree that a force majeure event has occurred or does not agree to the extension of time sought by Defendants, EPA will notify Defendants in writing of EPA's position, which shall be binding unless Defendants invoke dispute resolution under Section XI below no later than fifteen (15) days after receipt of EPA's written notice. In any such dispute, Defendants shall bear the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event as defined by this Section; that Defendants provided the written notice required by Paragraph 59; that the force majeure event caused any

nonperformance or noncompliance Defendants claim was attributable to that event; and that

Defendants exercised their best efforts to prevent or minimize any nonperformance or

noncompliance caused by the event.

## XI.  **DISPUTE RESOLUTION**

62.    Unless otherwise provided in this Consent Decree, the dispute resolution

procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or

with respect to this Consent Decree.  However, such procedures shall not apply to actions by the

United States to enforce obligations of Defendants that have not been disputed in accordance

with this Section.

63.    Informal Dispute Resolution:  Any dispute subject to dispute resolution under this

Consent Decree shall first be the subject of informal negotiations.  The dispute shall be

considered to have arisen when Defendants provide written notice to EPA describing the nature

of the dispute and requesting informal negotiations to resolve it.  The period of informal

negotiations shall not exceed twenty (20) days beyond the date that EPA receives Defendants'

written notice unless EPA and Defendants agree in writing to a longer period.  If the parties

cannot resolve a dispute by informal negotiations, then the position advanced by EPA shall be

considered binding unless, within fifteen (15) days after the conclusion of the informal

negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

64.    Formal Dispute Resolution:  Defendants shall invoke formal dispute resolution

procedures, within the time period provided in the preceding Paragraph, by providing written

notice to the United States containing a statement of position regarding the matter in dispute.

The statement of position shall include, but may not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

65.     The United States shall provide written notice containing its own statement of position to Defendants within forty-five (45) days of receipt of Defendants' statement of position. The United States' statement of position shall include, but may not be limited to, any factual data, analysis, or opinion supporting that position and all supporting documents relied upon by the United States. The United States' statement of position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

66.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII, a motion requesting judicial resolution of the dispute. The motion must be filed within ten (10) days of receipt of the United States' statement of position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree. Defendants' motion to the Court shall not raise new issues or submit new facts that were not previously presented to the United States during formal dispute resolution.

67.     The United States shall respond to Defendants' motion within the time period provided in the local rules of the Court, unless the parties stipulate otherwise.  Defendants may file a reply memorandum to the extent permitted by the local rules or the parties' stipulation, as applicable.

68.     In any judicial proceeding pursuant to this Section's formal dispute resolution procedures, Defendants shall bear the burden of demonstrating that their position clearly complies with, and furthers the objectives of, this Consent Decree and the CAA, and that Defendants are entitled to relief under applicable law.  The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

69.     The invocation of dispute resolution procedures under this Section shall not extend, postpone, or affect any obligation of Defendants under this Consent Decree not directly in dispute, unless the final resolution of the dispute so dictates.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of nonperformance, but payment shall be stayed pending resolution of the dispute as provided in this Section.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX above.

70.     The assessment of stipulated penalties pursuant to Paragraph 46 regarding Defendants' failure to timely pay their civil penalty shall not be subject to dispute resolution under this Section.  For such assessments, the United States' determination regarding the lateness of the civil penalty and any stipulated penalties assessed as a result shall be unreviewable and final.

## XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

71.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging of this Consent Decree.  This Consent Decree does not limit any rights or remedies available to the United States for any criminal violations.

72.     Except as expressly provided in this Section, this Consent Decree shall not be construed to prevent or limit the rights of the United States to obtain penalties or injunctive relief under the CAA, any regulations or permits issued pursuant to the CAA, or any other federal or state laws, regulations, or permits.

73.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations, and in no way relieves Defendants of their responsibility to comply with all applicable federal, state, and local permits, laws and regulations.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with the provisions of the CAA, or with any regulations or permits issued thereunder.

74.     This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties not party to this Consent Decree, nor does it limit the rights of third parties not party to this Consent Decree against Defendants, except as otherwise provided by law.

75.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

76.     Except as expressly provided in this Consent Decree, the United States reserves

all legal and equitable remedies available to enforce the provisions of the Decree.  The United

States further reserves all legal and equitable remedies to address any imminent and substantial

endangerment to the public health, welfare or the environment arising at or posed by any of

Defendants' facilities, whether related to the violations addressed in this Consent Decree or

otherwise.

## XIII.   NOTICES

77.     Unless otherwise specified herein, whenever written notifications, information or

reports are required by this Consent Decree, they shall be sent to the individuals and addresses

specified below:

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Attn:  Brad L. Levine
bradley.levine@usdoj.gov

Steven J. Viggiani
Senior Enforcement Counsel
U.S. Environmental Protection Agency, Region 1
Mail code OES04-3
5 Post Office Square, Suite 100
Boston, Massachusetts  02109-3912
viggiani.steven@epa.gov

As to Defendants:

Janis O. Kearney
Director of Environmental Compliance
Massachusetts Bay Transit Authority
Ten Park Plaza
Boston, Massachusetts 02116-3974
JKearney@MBTA.com

Marie Breen
General Counsel
Massachusetts Bay Commuter Railroad Company
89 South Street, 8th Floor
Boston, Massachusetts 02111
marie.breen@mbcr.net

78.     Any party may, by written notice to the other parties, change its designated notice

recipient or notice address provided above.

## XIV.  COSTS

79.     Each party shall bear its own costs, disbursements and attorneys' fees in this

action, and specifically waives any right to recover such costs, disbursements or attorneys' fees

from the other parties pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, or other

applicable law.  However, the United States shall be entitled to collect its costs, disbursements

and attorneys' fees incurred in any action necessary to collect any outstanding penalties due

under this Consent Decree or to otherwise enforce the Decree.

## XV.  MODIFICATION

80.     The terms of this Consent Decree may be modified only by a subsequent written

agreement signed by the Parties.  Where the modification constitutes a material change to any

term of this Consent Decree, it shall be effective only upon approval by the Court.

81.     Any disputes concerning modification of this Decree shall be resolved pursuant to

Section XI, provided, however, that instead of the burden of proof provided by Paragraph 68, the

party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVI.  **INTEGRATION**

82.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XVII.  **SIGNATORIES/SERVICE**

83.    Each party certifies that at least one of their undersigned representatives is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such party to this document.

84.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

85.    Defendants agree to accept service of process by mail with respect to all matters arising under this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable local rules of this Court including, but not limited to, service of a summons.  Defendants agree that the following agents are authorized to accept the above-described service of process on Defendants' behalf:

Janis O. Kearney
Director of Environmental Compliance
Massachusetts Bay Transit Authority
Ten Park Plaza
Boston, Massachusetts  02116-3974

Marie Breen
General Counsel
Massachusetts Bay Commuter Railroad Company
89 South Street, 8th Floor
Boston, Massachusetts  02111

Defendants shall notify the United States as specified in Section XIII above of any change in the

identity or address of Defendants, their agents for service, or their counsel.

## XVIII.   **PUBLIC PARTICIPATION**

86.     This Consent Decree shall be lodged with the Court for a period of not less than

thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United

States reserves the right to withdraw or withhold its consent if, upon consideration of any

comments received regarding the Consent Decree, the United States concludes that the Consent

Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of the Consent

Decree without further notice or proceedings.  Defendants agree not to withdraw from or oppose

the entry of the Decree or to challenge any of the Decree's provisions, unless the United States

has notified Defendants in writing that it no longer supports entry of the Decree.

87.     If, for any reason, this Court should decline to approve this Consent Decree in the

form presented, this agreement is voidable at the sole discretion of any party, and the terms of

the agreement may not be used as evidence in any litigation between the parties.

## XIX.  EFFECTIVE AND TERMINATION DATES

88.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

89.     Defendants may provide the United States with a written request for termination of this Consent Decree after Defendants have (a) completed the requirements of Sections V.B, V.C, V.D, VI and VII, and Appendix I, of this Consent Decree, (b) maintained compliance with Section V.A of this Consent Decree for a period of two (2) years after the Decree's Effective Date, and (c) paid the civil penalty and any stipulated penalties required by this Consent Decree. The request for termination shall state that Defendants have satisfied the above requirements, and shall include any necessary supporting documentation.

90.     Following receipt by the United States of Defendants' request for termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

91.     If the United States does not agree that the Consent Decree may be terminated, Defendants may invoke dispute resolution under Section XI above.  However, Defendants shall not seek such dispute resolution until sixty (60) days after service of their request for termination.

## XX.  **RETENTION OF JURISDICTION**

92.      The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, or effectuating or enforcing compliance with the terms of this Decree.

## XXI.  **FINAL JUDGMENT**

93.      Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the United States and Defendants.

Judgment is hereby entered in accordance with the foregoing Consent Decree this _____

day of _____ 20__.


_____
UNITED STATES DISTRICT JUDGE

UNITED STATES V. MBTA and MBCR CONSENT DECREE

For Plaintiff, UNITED STATES OF AMERICA:


IGNACIA S. MORENO                           7/27/10
Assistant Attorney General                  Date
Environment and Natural Resources Division
U.S. Department of Justice


BRADLEY L. LEVINE                           7/27/10
Trial Attorney                              Date
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611


CARMEN M. ORTIZ
United States Attorney
District of Massachusetts

GEORGE B. HENDERSON, II
Assistant U.S. Attorney
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3272

UNITED STATES V. MBTA AND MBCR CONSENT DECREE

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


_Susan Studlien_                              _09/21/10_
SUSAN STUDLIEN                                Date
Director
Office of Environmental Stewardship
U.S. Environmental Protection Agency,
  Region I
Mail Code OES04-5
5 Post Office Square, Suite 100
Boston, Massachusetts  02109-3912


_____                     _7/20/10_
STEVEN J. VIGGIANI                            Date
Senior Enforcement Counsel
Office of Environmental Stewardship
U.S. Environmental Protection Agency,
  Region I
Mail Code OES04-3
5 Post Office Square, Suite 100
Boston, Massachusetts  02109-3912

UNITED STATES V. MBTA AND MBCR CONSENT DECREE


FOR Defendant, MASSACHUSETTS BAY TRANSIT AUTHORITY


WILLIAM A. MITCHELL, JR.                    6 - 16 - 10
General Counsel                             Date
Massachusetts Bay Transit Authority
Ten Park Plaza
Boston, Massachusetts  02116-3974

UNITED STATES V. MBTA AND MBCR CONSENT DECREE


FOR Defendant, MASSACHUSETTS BAY COMMUTER RAILROAD COMPANY


*Donald L Saunders*                    7-2-2010
DONALD L. SAUNDERS              Date
Acting General Manager
Massachusetts Bay Commuter Railroad Company
89 South Street, 8th Floor
Boston, Massachusetts  02111

### APPENDIX I – COMMUTER RAIL CLEAN DIESEL PROJECT

1.    The Commuter Rail Clean Diesel Project, a supplemental environmental project ("SEP"), will reduce harmful air pollutants in the greater Boston metropolitan area from diesel locomotive exhaust by supplying all commuter rail locomotives in Defendants' commuter train fleet with ultra-low sulfur diesel fuel.

2.    Currently, Defendants' commuter rail locomotives use "low sulfur" diesel fuel, which has a sulfur content of no more than 500 parts per million ("ppm").  Ultra-low diesel fuel has a sulfur content of no more than 15 ppm.

3.    Defendants shall purchase and commence supplying ultra-low sulfur diesel fuel to all of their commuter rail locomotives by no later than June 1, 2010.  After this date, only ultra-low sulfur diesel fuel shall be used in all of Defendants' commuter rail locomotives.

4.    At all times, Defendants shall continue to perform this SEP by purchasing and using ultra-low sulfur diesel fuel in all their commuter rail locomotives until at least June 1, 2012 and thereafter until the effective date of federal regulations ("non-road diesel fuel regulations") requiring the use of ultra-low sulfur diesel fuel in locomotives.

**APPENDIX II – MBTA/MBCR LAYOVER FACILITIES AND LOCATIONS**

(ATTACHED CHART)

## MBTA/MBCR Layover Facilities and Locations

| Location | Address | Number of Electric Plug-In Stations | Number of Electric Plug-in Stations Operational | Maximum Number of Locomotives Stored at One Time | Notes |
|---|---|---|---|---|---|
| Bradford Layover Facility | 86 Railroad Avenue Bradford, MA 01835 | 4 | 4 | 4 | Overnight Storage |
| Commuter Rail Maintenance Facility (aka Boston Engine Terminal): Yard 14 | 70 Rear Third Avenue Somerville, MA 02143 | 10 | 10 | 10 | |
| Commuter Rail Maintenance Facility: West End Diesel House | 70 Rear Third Avenue Somerville, MA 02143 | 2 (proposed) | 0 | 8 (proposed) | Each new plug-in station will supply electric power to four locomotives on two tracks; work to be completed by 9/1/10. |
| Fitchburg Layover Facility | 110 Summer Street Lunenburg, MA 01462 | 5 | 5 | 5 | Overnight Storage |
| Franklin Layover Facility | 110 Depot Street Franklin, MA 02038 | 3 | 3 | 3 | Overnight Storage |
| Greenbush Layover Facility | New Driftway Road Scituate, MA 02066 | 4 | 4 | 4 | Overnight Storage |
| Kingston Layover Facility | 60 Marion Drive Kingston, MA 02364 | 4 | 4 | 4 | Overnight Storage |
| Middleboro Layover Facility | 65 West Clark Street Middleboro, MA 02346 | 4 | 4 | 4 | Overnight Storage |
| Needham Layover Facility | 130 West Street Needham, MA 02492 | 3 | 3 | 3 | Overnight Storage |
| Newburyport Layover Facility | 9 Newburyport Turnpike Newbury, MA 01951 | 4 | 4 | 4 | Overnight Storage |
| North Station Terminal | 135 Causeway Street Boston, MA 02114 | 10 | 10 | 0 | |

| | | | | | |
|---|---|---|---|---|---|
| Pawtucket Layover Facility | 5 Access Road Pawtucket, RI | 6 | 6 | 6 | Overnight Storage |
| Readville Mechanical Coach Maintenance Facility | 41R Wolcott Court Hyde Park, MA 02136 | 11 | 11 | 0 | |
| Rockport Layover Facility | 5 Station Square Rockport, MA 01966 | 4 | 4 | 4 | Overnight Storage |
| South Hampton Front Yard (aka Front Yard) | 2 Frontage Road South Boston, MA 02118 | 3 | 3 | 3 | Overnight storage on Amtrak property, power supplied by temporary generator. |
| South Hampton Main Yard (aka Big Yard) | 2 Frontage Road South Boston, MA 02118 | 4 | 0 | 8 | Amtrak property; modification of existing plug-ins scheduled for 2012; each modified plug-in will supply electric power to two locomotives. |
| South Station Terminal | Summer Street Boston, MA 02110 | 13 | 13 | 0 | Amtrak Property |
| Widett Circle Commuter Rail Service and Inspection Facility ("Widett Circle") Maintenance/Storage Building | 110 Widett Circle South Boston, MA 02118 | 2 | 2 | 2 | |
| Widett Circle Facility: Track 4 & Runner Track | 110 Widett Circle South Boston, MA 02118 | 1 (proposed) | 0 | 2 (proposed) | New plug-in station will supply electric power to two locomotive on these tracks; work to be completed by 9/1/10. |
| Worcester Layover Facility | 45 Shrewsbury Street Worcester, MA 01604 | 4 | 4 | 4 | Overnight Storage |